[Civil No. 1478.   Filed December 11, 1915.]

[153 Pac. 285.]

## J. R. BROUGHT, Appellant, v. REDEWILL MUSIC COMPANY, a Corporation, Appellee.

1. SALES—RIGHTS OF BUYER—IMPLIED WARRANTIES.—Under Civil Code of 1913, paragraph 5163, declaring that there is no implied warranty or condition as to the quality or fitness of goods, except where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, there is an implied warranty that the goods shall be reasonably fit for such purpose, the seller of a musical instrument, who knew that it was purchased to furnish music in a moving picture theater, and represented that it would fill the place of an orchestra, must be held as a matter of law to have warranted that the instrument was reasonably fit for such purpose.

2. SALES—REMEDIES OF BUYER — BREACH OF WARRANTY. — Under Civil Code of 1913, paragraph 5159, declaring that the buyer may treat the fulfillment by the seller of his obligation to furnish goods as described and as warranted, expressly or by implication, as a condition of the obligation of the buyer to perform his promise to accept and pay for the goods, the buyer of a mechanical musical instrument, which was not reasonably fit for the purpose for which it was sold, may refuse to accept the instrument, in which case the property does not pass to the buyer, and the seller cannot recover installments due.

3. SALES—REMEDIES OF SELLER—WAIVER.—Whether a buyer waived the seller's breach of an implied warranty that the article was reasonably fit for the purpose for which it was sold is largely a question of intention.

4. SALES—REMEDIES OF BUYER—WAIVER.—A seller, who claims that the buyer waived breach of warranty that the article should be reasonably fit for the purpose intended, has the burden of proof.

[As to implied warranty in sale of article for a particular purpose, see note in 102 Am. St. Rep. 616.]

5. SALES—REMEDIES OF SELLER—EVIDENCE.—In an action for the purchase price of a mechanical musical instrument, evidence held to show that the buyer refused to accept and did not waive defects in the instrument which rendered it unfit for the purpose intended.

6. SALES—REMEDIES OF BUYER—WAIVER.—That the buyer of a mechanical musical instrument paid some of the installments, objecting all

the time that the instrument would not work, does not show a waiver of the implied warranty that it was reasonably fit for the purpose intended.

APPEAL from a judgment of the Superior Court of the County of Maricopa. J. C. Phillips, Judge. Reversed and remanded.

Mr. C. D. Jamison and Mr. H. W. Clark, for Appellant.

Mr. Lewis T. Carpenter, Mr. R. M. Fleming and Mr. J. H. Langston, for Appellee.

CUNNINGHAM, J.—On June 5, 1913, the parties entered into an installment contract, by the terms of which the appellee contracted to sell to the appellant a musical instrument called a "Peerless Orchestrion" for an agreed sum and price of $1,800. The appellant agreed to pay said price by delivering to appellee, the music company, an old mechanical player piano valued at $600, and agreed to pay $100 cash at the time of making the contract, and $100 on August 5, 1913, and $100 on the fifth day of each month thereafter until the full amount of the balance of the purchase price was paid, with interest at the rate of 8 per cent per annum on deferred payments, the interest payable monthly. It was agreed that if the balance was paid in six months the appellant would be allowed a discount of $100. As of the date of the contract, June 5, 1913, the appellant signed and delivered his promise in writing to pay the balance of $1,200, as above specified, upon the conditions, among others, following, omitting the conditions not involved in this case:

"It is expressly agreed that the title to the above-described instrument, for which this contract is given, is and shall remain in Redewill Music Company, and under their direction, until paid for in full. Should the said instrument be misused, or . . . should I make default in the payment of any of said installments or interest as above specified, or . . . should there be failure on my part to keep any of the promises or agreements herein stated, then the whole amount of this contract becomes immediately due and payable; it being optional with Redewill Music Company to enforce payment or retake the said instrument."

Then follow the provisions for retaking the instrument, but they are not important here.  Continuing, the contract provides:

"In case suit is instituted to collect this contract, I agree to pay all costs, including attorney's fees in said suit. . . . Tuning, if any, to be at my expense.  Upon payment by me in full of this contract Redewill Music Company shall give me a bill of sale of said instrument."

The circumstances under which the contract was made were detailed by the witnesses for both parties, and the evidence agrees in the main features.  Eugene Redewill, the manager of plaintiff company, as a witness in its behalf, testified on his cross-examination in rebuttal on this point as follows:

"He [referring to the appellant] came to the store and ordered it [referring to the instrument] in the office.  He had the one that we sold him.  He was in the market for another instrument, and had been negotiating and writing east for another instrument at the time.  We did not guarantee this instrument, any more than that it would give satisfaction. I told him I thought he would get satisfaction.  I didn't guarantee it. . . . "

Defendant-appellant, as a witness in his own behalf, testified that:

"He [Redewill] said it [the instrument] was an eight-piece orchestra, . . . the same as eight people playing in a band.  He said he would keep it in repair for one year.  He said he would warrant it.  He said the piano was all right. He said it was a fine piece of music. . . . I did not see the instrument before it was delivered to me. . . . I had no opportunity to see it."

The plaintiff-appellee was a large dealer in musical instruments, and the defendant-appellant was conducting a motion picture show, in which he used music as a part of his entertainments.  Appellant and appellee had had previous dealings with mechanical musical instruments, and one such instrument was then in use by the appellant, which appellee sold him.  He had rejected at least one other such instrument appellee had ordered and offered to sell him.  The purpose for which this instrument in question was intended was well known to the appellee when the order was given.  A picture

of the instrument was shown appellant by appellee's sales-man, and the instrument was described to him as above mentioned. When the order was given, on June 5, 1913, appellee wired for the instrument, and it arrived in Phoenix and was placed in appellant's theater on June 28, 1913. Appellant then paid $100, delivered the old instrument, and signed the contract as of date of June 5, 1913. The instrument required adjustment from the beginning, and appellee sent its repair-man to make the adjustments. Controversies arose as to the operation of the instrument, and it failed to produce music of a satisfactory quality. When the next installment became payable, appellant refused to pay until appellee would cause the instrument to work as intended. Again the repair-man gave it attention and said it was all right, and the payment was made. The same thing was repeated when each subsequent installment became payable. When the December 5th installment became payable the appellant, on December 8, 1913, "told them I couldn't pay any more unless they could make it work. At last it wouldn't work at all. . . . I told plaintiff [appellee] it was no good; it wouldn't work; if he couldn't fix it, to take it out and sell it, and simply do what he wanted to with it. After that I closed the box down, and when I had to leave the theater I . . . stored it."

This action was commenced on December 23, 1913, and is based upon appellant's failure to pay the $100 installment payable, by the contract, on December 5, 1913; and a recovery of the balance becoming due on the contract is sought because of the default in payment of the said installment due on December 5, 1913, as provided by the contract. From a judgment in favor of appellee for the full amount claimed, this appeal is prosecuted.

Defense is made upon a number of alleged grounds, but on the trial the contest narrowed down to the question of whether the failure of the musical instrument to operate and produce music resulted from defects in the instrument, or from the misuse of the instrument by the appellant.

The real question was whether, under the terms of the contract of purchase and sale, the plaintiff was under the obligation, as a condition precedent to defendant's liability on the contract, to furnish a mechanical musical instrument reason-

ably suited to meet the purposes for which the parties intended its use. In other words, did the law raise from the circumstances an implied warranty by the plaintiff that the instrument furnished under the contract should be reasonably suited and fitted to perform the purpose for which it was intended?

"There is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell . . . except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, . . . there is an implied warranty that the goods shall be reasonably fit for such purpose." Paragraph 5163, Civil Code of Arizona 1913 (Sales Act).

From the evidence of both parties, no doubt exists that the seller had full knowledge of the particular purpose for which the musical instrument was required, nor that the defendant relied upon the judgment of plaintiff that the instrument was reasonably fitted for the purpose for which it was intended. The plaintiff's manager and agent, with whom defendant negotiated the contract and fixed its terms, testified that the instrument was intended to give satisfaction. This could have no fair meaning other than that the instrument was intended by plaintiff to be reasonably fit for the particular purpose for which it was required. To attribute any other meaning to the witness' testimony would be equivalent to charging the plaintiff with irregular business methods and dealings, to say the least. Fairness to the parties requires an interpretation to be placed on the circumstances surrounding the making of the contract of an intention to contract with reference to a mechanical musical instrument reasonably fitted for the particular purpose of producing music at the defendant's motion picture entertainments. Consequently the seller, as a matter of law, must be held to have warranted that the goods, the mechanical musical instrument, it contracted to furnish as a condition precedent to the defendant's liability on the contract, would be, when delivered, reasonably fit for such purpose, and that the defendant relied upon the seller's judgment in that respect.

Such defense was interposed by the defendant and reasonably sustained by the uncontradicted evidence at the trial. The evidence is uncontradicted that the defendant refused to accept the instrument delivered by the plaintiff, and so notified plaintiff of his refusal about December 8, 1913, and refused to proceed with the contract. The property in the instrument had not then passed to the buyer, and under paragraph 5159 of the Civil Code of Arizona of 1913 (Sales Act), "The buyer may treat the fulfillment by the seller of his obligation to furnish goods as described and as warranted expressly or by implication in the contract to sell as a condition of the obligation of the buyer to perform his promise to accept and pay for the goods."

When the buyer refused to accept the instrument as a fulfillment by plaintiff of its obligations under the contract of sale, he acted wholly within his rights under the contract, provided the instrument in fact failed to meet the conditions of warranty implied by law from the circumstances under which the contract was made. In the view we take of the case, we will not discuss the evidence in the record in detail; but it suffices to say that the evidence can be given no interpretation other than that the instrument failed to perform the purpose for which it was intended. A conflict appears in the evidence on a question as to whether the failure arose from a misuse of the instrument by the defendant before he definitely rejected it, or whether the failure resulted from some other cause; but the fact remains that the instrument was not such instrument as the parties had in contemplation when they made the contract of sale, and that the defendant refused to proceed with the contract, and did not waive the performance of the condition to have delivered to him such instrument as plaintiff promised. Consequently defendant's failure or refusal to make further payments until plaintiff furnished such instrument as it promised gave no right of action for the recovery of any installment provided in the contract. The counsel discuss in their briefs the question of waiver of the condition at length, and seem to concede that the lower court considered the question of waiver as controlling. Whether such reason did or did not influence the decision of the lower court does not appear from the record, and if it did so appear, it would amount to a reason for the deci-

sion by that court which would not affect the decision of this court.

"The question of waiver is mainly a question of intention, which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby." 40 Cyc. 261, 262.

"The burden is upon the party claiming the waiver to prove it by such evidence as does not leave the matter doubtful or uncertain; but he is only required to prove it by the preponderance of evidence as in other civil actions." 40 Cyc. 269.

There is no substantial evidence of waiver in the record. On the other hand, there is positive evidence tending to prove that the defendant was at all times complaining of the instrument furnished him, and that he retained it in his possession, insisting that it be made to perform its purpose, and it was finally definitely and unequivocally rejected because he claimed it would not "work." The position of the plaintiff is that defendant failed to pay the installment promised on December 5, 1913; and that of the defendant is that, while he failed to make such payment, he was justified under the contract, because the plaintiff had failed on its part to perform a condition precedent, viz., to deliver such an instrument as it agreed by the implied terms of the contract. The evidence responsive to the issues joined supports the theory of the defense, and there is no substantial evidence supporting the theory of a waiver of the right asserted in the defendant's theory. Consequently the judgment that defendant have nothing on his cross-complaint is contrary to the uncontradicted evidence.

For the same reasons the judgment in favor of the plaintiff for the balance payable on the face of the contract is contrary to the law and the evidence, and for the further reason that the payment of no installment was enforceable until plaintiff had first performed on its part as contemplated by the condition of the contract. The mere fact that the defendant had paid installments falling due prior to the time he accepted the offered performance by the plaintiff, and before he defi-

nitely rejected the offered performance, without something further, could not be the basis for an inference that the defendant had accepted the instrument offered as performance, nor that the defendant waived strict performance.

Upon the whole record, justice requires that a new trial be had of the issues involved. To that end the pleadings may be amended and settled.

The judgment is reversed and the cause remanded for a new trial.

ROSS, C. J., and FRANKLIN, J., concur.

On implied warranty of fitness of property bought for a special purpose, see notes in 22 L. R. A. 187; 15 L. R. A. (N. S.) 868; 31 L. R. A. (N. S.) 783; 34 L. R. A. (N. S.) 737.

On right of purchaser to reject goods for breach of warranty, see note in 27 L. R. A. (N. S.) 914.